**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ARACELI DOTAROT MONTUYA,**<br><br>　Plaintiff,<br><br>　　v.<br><br>**ANTOINE CHEDID**<br><br>and<br><br>**AFIFE NICOLE CHEDID,**<br><br>　Defendants. | Civil Action No.  10-695 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Araceli Dotarot Montuya brings this action against Defendants Antoine Chedid and Afife Nicole Chedid for various claims arising out of her employment as a domestic servant for Defendants.  Antoine Chedid is the Ambassador of Lebanon to the United States, and Afife Nicole Chedid is his wife.  Defendants have now filed a Motion to Dismiss Plaintiff's Complaint and Quash Service on the ground that Defendants are entitled to diplomatic immunity.[1]

**I.    Background**

In her Complaint Plaintiff alleges that she was brought to the United States in August 2007 to work as Defendants' domestic servant.  Compl., ¶ 7.  In that position Plaintiff claims that she performed a variety of tasks, including gardening, cleaning, cooking, and caring for Defendants' three children.  Id., ¶ 9.  She contends that she worked no fewer than 15 hours a day, six days a week, while employed by Defendants.  Id., ¶¶ 10-12.  For this work, she asserts, Defendants did not pay her minimum wage, even though they had signed a contract with the

---

[1] The Court has reviewed the Motion, Plaintiff's Opposition, and Defendants' Reply.

1

State Department saying they would.  Id., ¶¶ 8, 18.  When she complained about her working conditions, Plaintiff alleges that Defendants retaliated against her by verbally abusing and insulting her.  Id., ¶¶ 13-14.  Plaintiff, moreover, claims that she was not allowed to leave Defendants' home and was illegally confined there.  Id., ¶ 15.

These allegations form the basis of Plaintiff's nine-count Complaint.  More specifically, Plaintiff raises claims under the Fair Labor Standards Act and the District of Columbia's minimum wage law, as well as common law claims for breach of contract, intentional misrepresentation, false imprisonment, and intentional infliction of mental distress.  Finally, Count IX raises human rights violations based on her living conditions, violations of privacy, intimidation, and threats.

Defendants have responded by filing the instant Motion to Dismiss and Quash Service of Process.

## II. Discussion

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1351, which grants district courts "original jurisdiction, exclusive of the courts of the States, of all civil actions and proceedings against . . . members of a mission or members of their families (as such terms are defined in section 2 of the Diplomatic Relations Act)."  See also Logan v. Dupuis, 990 F.Supp. 26, 27 n.2 (D.D.C. 1997).

### A. Diplomatic Immunity

The question here, put simply, is whether Defendants' alleged acts are protected by diplomatic immunity.  The answer requires an examination of the Vienna Convention and a determination whether a particular exception applies.

Diplomatic immunity is provided for in the Vienna Convention on Diplomatic Relations ratified by the United States in 1972. Article 31 of the VCDR provides that a "diplomatic agent shall . . . enjoy immunity from [the receiving state's] civil and administrative jurisdiction . . . ." VCDR, Article 31(1). There are three exceptions to this diplomatic immunity, including an exception "in the case of . . . (c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." Id. The VCDR, moreover, states that a diplomatic agent "shall not in the receiving State practise for personal profit any professional or commercial activity." VCDR, Article 42. Finally, Article 37 provides for the same immunity for "members of the family of a diplomatic agent forming part of his household, if they are not nationals of the receiving State."

In accordance with the treaty, Congress enacted the Diplomatic Relations Act, 22 U.S.C. § 254d, which provides that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . shall be dismissed." If the Court, therefore, concludes that Defendants are entitled to diplomatic immunity, it must dismiss the action. See Gonzalez Paredes v. Vila, 479 F.Supp. 2d 187, 191 (D.D.C. 2007); see also Sabbithi v. Al Saleh, 605 F.Supp. 2d 122, 130 (D.D.C. 2009), vacated in part on other grounds, No. 07 Civ. 115 (D.D.C. Mar. 8, 2011).

Diplomatic immunity "may be established upon motion or suggestion by or on behalf of the individual." 22 U.S.C. § 254d. Here, Defendants attached a letter from the State Department dated May 18, 2010, as an exhibit to their Motion to Dismiss. Motion, Ex. 3. In that letter, the State Department confirmed that in July 2007, the Embassy of Lebanon notified the State Department that Antoine Chedid was a diplomatic agent at the Embassy of Lebanon, and, as of May 2010, he continued to serve in that capacity. Id. The State Department also certified that

the Embassy of Lebanon had notified it that Afife Nicole Chedid was his spouse and formed part of his household. Id. In addition, Defendants attached the State Department's Diplomatic List from 2007-2009, which lists Defendants as diplomats of Lebanon. Id., Ex. 2. The Court must accept the State Department's determination that Defendants have diplomatic status. See Jungquist v. Nahyan, 940 F.Supp. 312, 321-22 (D.D.C. 1996) rev'd in part on other grounds, 115 F.3d 1020 ("[T]he determination of a diplomat's status is made by the State Department, not the Court."). Because Defendants have diplomatic status under the VCDR, they are entitled to diplomatic immunity, unless one of the exceptions in the VCDR applies. See Sabbithi, 605 F.Supp. 2d at 126.

    B.  The "Commercial Activity" Exception

Plaintiff argues that Defendants are not entitled to diplomatic immunity because her employment falls into the "commercial activity" exception of the VCDR. Opp. at 2. Plaintiff contends that the plain language of the treaty and its legislative history support her position that hiring a domestic servant is "commercial activity . . . outside [the diplomat's] official functions." Id. To that end, Plaintiff cites to a wealth of statutory interpretation precedent, but fails to cite, let alone distinguish, the relevant case law in this District. Twice in recent years, other judges in this Court have considered this precise issue. See Sabbithi, 605 F.Supp. 2d at 130 (holding that hiring a domestic servant was not "commercial activity" under the VCDR); Gonzalez Paredes, 479 F.Supp. 2d at 191 (holding same). Although neither Gonzalez Paredes nor Sabbithi is controlling, given that neither is an appellate opinion, the Court finds the reasoning in both cases to be persuasive.

In Gonzalez Paredes, the plaintiff was hired by the defendants in Argentina to work as a domestic servant for defendants while they served on a diplomatic mission to the United States.

479 F.Supp. 2d at 189. She alleged that they signed an employment contract agreeing to pay her $6.72 per hour, plus overtime, and that the contract was presented to the United States Embassy in Argentina for the purposes of obtaining an A-3 visa. Id. at 190. The plaintiff claimed that, contrary to the promises made in the contract, she worked 77 hours per week and was paid only $500 per month. Id. She then filed suit for violations of federal and local wage laws, breach of contract, and unjust enrichment. Id. The defendants moved to dismiss the complaint and quash service of process based on diplomatic immunity. Id.

In determining whether the hiring of a domestic worker was a commercial activity outside the diplomat's official functions, the Gonzalez Paredes court considered a document entitled "Statement of Interest" filed by the State Department. Gonzalez Paredes quoted the State Department as stating, "When diplomats enter into contractual relationships for personal goods or services incidental to residing in the host country, including the employment of domestic workers, they are not engaging in 'commercial activity' as that term is used in the Diplomatic Relations Convention." Id. at 193 (internal quotation marks omitted). While not finding it conclusive, the Gonzalez Paredes court afforded the State Department's opinion great weight because it is the government agency charged with enforcing the VCDR. Id. Finding no reason to disagree with the conclusion of the State Department, the court held that a contract for domestic services was not itself "commercial activity" under the VCDR and therefore dismissed plaintiff's complaint. Id. at 195.

Just two years later, another court in this District had the opportunity to consider the same issue. Sabbithi, 605 F.Supp. 2d at 124. In Sabbithi, three domestic workers brought suit against their former employer, a Kuwaiti diplomat, as well as his wife and the State of Kuwait, claiming that the defendants violated federal and state wage laws, breached their employment contracts,

and violated human rights laws, including the Thirteenth Amendment to the United States Constitution.  Id.  The defendants moved to dismiss the plaintiffs' complaint and quash service of process based on diplomatic immunity.

The Sabbithi court also considered a Statement of Interest filed by the State Department when considering whether the hiring of a domestic worker was a commercial activity.  That Statement of Interest, much like the one filed in Gonzalez Paredes, again expressed the State Department's view that this activity was not commercial activity under the VCDR.  Id. at 128.  Finding both Gonzalez Paredes and the State Department's opinion persuasive, the Sabbithi court held that the individual defendants were entitled to diplomatic immunity and therefore dismissed the plaintiffs' suit against them.  Id. at 130.

Courts in this District are not the only courts to have considered whether the "commercial activity" exception applies to the employment of domestic servants.  Indeed, the Fourth Circuit held the exception inapplicable to a contract for domestic services as early as 1996 in Tabion v. Mufti, 73 F.3d 535 (4th Cir. 1996).  There, too, a domestic servant brought an action against her diplomat employer, and the Fourth Circuit found the State Department's opinion on the issue to be persuasive, quoting the agency as stating, "[The commercial activity exception] focuses on the pursuit of trade or business activity; it does not encompass contractual relationships for goods and services incidental to the daily life of the diplomat and family in the receiving State." Id. at 538 (internal quotations omitted).  The Fourth Circuit thereafter held that, because hiring domestic servants was a "service[] incidental to daily life, diplomats are to be immune from disputes arising out of them." Id. at 539.

In an attempt to overcome the weight of these contrary holdings, Plaintiff urges the Court to consider case law interpreting the term "commercial activity" under the Foreign Sovereign

6

Immunities Act, 28 U.S.C. § 1602 et seq., when determining the scope of the "commercial activity" exception in the VCDR. This Court, like the Sabbithi, Gonzalez Paredes, and Tabion courts, declines to do so. See Sabbithi, 605 F.Supp. 2d at 128 n.3; Gonzalez Paredes, 479 F.Supp. 2d at 192 n.5; Tabion, 73 F.3d at 539 n.7. First, the FSIA is a statute that establishes the framework for determining when federal or state courts may exercise jurisdiction over foreign states; it is not a multilateral treaty. Second, as the FSIA was enacted after the VCDR, it could not have served as a textual source for Vienna Convention delegates. Finally, the legislative history of the FSIA suggests that Congress did not intend for it to change the meaning of existing international treaties. See Tabion, 73 F.3d at 539 n.7 (citing H.Rep. No. 1487, 94th Cong., 2d Sess. 12 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6610 ("[The FSIA is not] intended to affect either diplomatic or consular immunity.")); accord Knab v. Republic of Georgia, 1998 WL 34067108, at *4, n.4 (FSIA does not purport to modify or affect protections afforded under VCDR). FSIA case law is thus not appropriate to consider here.

Given that the FSIA does not alter the interpretation of the "commercial activity" exception, the Court finds no reason to disagree with the holdings in Sabbithi, Gonzelez Paredes, and Tabion. The State Department's view remains eminently reasonable, and the hiring of domestic workers cannot be deemed commercial activity outside of a diplomat's official function.

Although the Court here finds diplomatic immunity and holds the commercial activity exception inapplicable, the Court is cognizant of the potential injustice to people in Plaintiff's position. Yet, as the Fourth Circuit carefully explained:

> Here, as in most cases invoking sovereign immunity, there may appear to be some unfairness to the person against whom the invocation occurs. But it must be remembered that the outcome merely reflects policy choices already made. Policymakers in

> Congress and the Executive Branch clearly have believed that diplomatic immunity not only ensures the efficient functioning of diplomatic mission in foreign states, but fosters goodwill and enhances relations among nations. Thus, they have determined that apparent inequity to a private individual is outweighed by the great injury to the public that would arise from permitting suit against the entity or its agents calling for application of immunity.

Tabion, 73 F.3d at 539. The Court, moreover, is mindful that the VCDR is not a unilateral document; what may prevent parties from obtaining redress in our courts also serves to protect American diplomats and their families from what we might consider as legal abuses overseas. This balancing is a policy decision this Court should not challenge.

**III.   Conclusion**

Because Defendants are entitled to diplomatic immunity, the Court hereby ORDERS that:

1. Defendants' Motion to Dismiss Plaintiff's Complaint is GRANTED;

2. Defendants' Motion to Quash Service is GRANTED; and

3. The case is DISMISSED.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   April 26, 2011